AUSTIN ELECTRIC RAILWAY COMPANY ET AL. V. MARY FAUST.

Decided November 23, 1910.

**1.—Street Car—Person Near Track—Rights in Street—Presumption—Charge.**

While street cars have no exclusive or paramount right to the use of the portion of the street covered by their tracks, they have a preferential right, to a certain extent, arising from the character of their operation. But whether one near the track may be presumed by the motorman to intend giving the car the right of way, instead of driving upon the track in front of it, depends upon circumstances. Any presumption that he will do so must be one of fact, to be indulged by the jury or not according to the circumstances. It is not a presumption of law to be given in charge to the jury as one on which the motorman is entitled to act.

**2.—Instructions to Juries.**

It is not error to refuse a requested charge where the matter therein was sufficiently covered by the instructions given by the court.

**3.—Negligence—Discovered Peril—Degree of Care.**

A charge holding the motorman of a street car only under the duty to use ordinary care on discovering a person upon the track in a perilous situation was properly refused. The duty in case of discovered peril was to use every means in his power to avert it consistent with the safety of his passengers.

**4.—Assignments of Error—Brief.**

Assignments of error which are too general, which do not show the objection to testimony complained of, which are not submitted as propositions or followed by propositions, or which are not followed by sufficient statements, will not be considered.

**5.—New Trial—Newly Discovered Evidence—Affidavit.**

Where the counsel presenting a motion for new trial on the ground of newly-discovered evidence are not the same who tried the case, their affidavit that the existence of the testimony was unknown to them till after the trial is not sufficient to show that the evidence was unknown.

**6.—Evidence—Reopening Case.**

After the evidence has been closed and the witnesses dismissed, reserving to the defendant only the right to introduce certain specific proof, the refusal to permit him to introduce other evidence was a matter within the discretion of the trial court and ground for reversal only in case of abuse of such discretion.

**7.—Evidence—Irresponsive Answer.**

That evidence was irresponsive to the question asked was not ground for reversal where the court directed the jury to disregard it.

**8.—Damages—Mental Suffering—Pleading.**

Allegation that plaintiff, by being struck by a runaway team, was "shocked and frightened" was a claim of mental suffering authorizing the submission of same as an element of damages recoverable.

**9.—Assignment of Error—Brief.**

An assignment of error in giving a charge, where it is not shown what the charge in question was and the entire statement of facts is referred to in support of it, will not be considered.

**10.—Verdict—Apportioning Damages—Correction—Charge.**

Where the jury, in an action against several defendants for damages by their concurring negligence, awarded an aggregate amount, but improperly apportioned the recovery between the defendants, it was proper for the court, by a supplemental charge, to direct them to render the verdict for the aggregate

sum against each of the defendants, and to receive such corrected verdict and render judgment thereon.

**11.—Concurring Negligence—Discovered Peril—Injury to Third Party.**

Where the driver of a wagon negligently drove on the street car track in front of a car which he knew or with ordinary care should have known to be approaching and a third party was injured in consequence of the collision due to the concurring negligence of such driver and those operating the car, the proprietors of both vehicles were liable to the injured person. That the motorman, after discovering the danger to the wagon and driver, was negligent in, failing to stop and avoid the collision, might affect the question of liability as between the defendants, but not that of the proprietor of the wagon to the injured person.

**12.—Concurring Negligence—Discovered Peril—Contribution—Indemnity.**

Where one party has by his negligence brought about a condition under which, by the concurring negligence of another, a third party is injured, he may recover against both; there will be no inquiry as to comparative negligence nor apportionment of the damages based on such comparison. But as between the defendants, if the negligence of one was merely passive or such only as to produce the occasion, and the other was the active perpetrator of the wrong, the former may recover over against the latter, his, the latter's, negligence being the proximate cause.

**13.—Evidence—Corporation—Admission of Liability by President.**

Evidence that the president of a street railway company admitted its liability for an injury by collision with a wagon should have been admitted where the only objection made was that it was immaterial and irrelevant, the question of the president's authority or of the admission being made by way of compromise not being raised.

**14.—Same—Hearsay.**

What the president of a street railway said as to the statement of a motorman, as to the circumstances of a collision with a wagon on the street, was hearsay and inadmissible.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

*Cochran & White, Allen, Hart & Patterson,* and *Ireland Graves,* for Austin Electric Railway, appellant.—The motorman on the street car had the right to presume that the driver of the ice wagon would not place himself in danger by turning across the street car track. Harbison v. Camden & S. Ry. Co., 74 N. J. L., 252; Atwood v. Connecticut Co., 74 Atl., 899; Dale v. Denver City T. Co., 173 Fed., 787, 790; Birmingham Ry. L. & P. Co. v. Clarke, 41 So., 829; Fritz v. Detroit C. St. Ry. Co., 105 Mich., 50; O'Connell v. St. Paul C. Ry. Co., 64 Minn., 466; Smith v. Minn. St. Ry. Co., 95 Minn., 254; Chicago U. T. Co. v. Broudy, 206 Ill., 615; Davidson v. Denver T. Co., 35 Pac., 920; Christensen v. Union T. L., 6 Wash., 75.

It is a reversible error to exclude relevant testimony in a material issue if it might have changed the result. (Relating to the exclusion of evidence of witness Jones as shown by bill of exceptions qualified by the court as follows: "All parties had closed the case the night before the above proceedings were had, except that it was agreed that the defendant should have the right the next morning to introduce proof

as to the actual measurements of the objects and distances that had been referred to in this instance; and the question asked Mr. Jones was, in the opinion of the court, not a measurement, but an opinion based upon measurements, and would reopen the case. The witnesses had all been excused, and the court did not deem it proper to reopen the case under the circumstances.") Taylor v. Ferguson, 87 Texas, 1; Todd v. Dysart, 23 Texas, 590; Able v. Sparks, 6 Texas, 349.

*F. C. Davis, Gregory, Batts & Brooks,* and *Geo. E. Shelley,* for Austin Ice Company, appellant.—Appellant alleged in cross-action a set of facts, the existence of which, if proved, would have entitled it to a judgment over against appellant railway company as prayed for in said cross-action. Hays v. Gainesville St. Ry. Co., 70 Texas, 607; McDonald v. Railway Co., 86 Texas, 13; T. & P. Ry. Co. v. Breadow, 90 Texas, 31; Galveston, etc., Ry. Co. v. Ryon, 70 Texas, 58.

The allegations of this appellant's pleadings to which exception was sustained showed that the ice company was in no manner responsible for the accident, and the acts of the railway company were wholly responsible for same, and this being true, this appellant was entitled to recover over against the railway company as prayed for in its pleadings. City of San Antonio v. Smith, 94 Texas, 266; City of San Antonio v. Talerico, 95 Texas, 154.

The evidence of an admission by appellant railway company of its responsibility for the accident in question, made by its president and chief executive officer, was admissible. City of Austin v. Nuckols, 42 Texas Civ. App., 5; Railway Co. v. German, 84 Texas, 141; Laredo, etc., Co. v. U. S. Elec. L. Co., 26 S. W., 310; Consolidated K. C. S. & R. Co. v. Gonzales, 50 Texas Civ. App., 79; Cooper Groc. Co. v. Britton, 74 S. W., 91; Standefer v. Aultman-Taylor Co., 34 Texas Civ. App., 160; Railway Co. v. Coleman, 18 Ill., 287; Northrup v. Insurance Co., 47 Mo., 435; Adams Ex. Co. v. Harris, 120 Ind., 73; Malecek v. Railway Co., 57 Mo., 17; Morse v. Railway Co., 6 Gray (Mass.), 450; Booker-Jones Oil Co. v. National Refi. Co., 63 Texas Civ. App., —; Hood v. Taylor, 3 Ind. App., 51; Grubles v. Nye, 13 S. & M. (Miss.), 443; Moore v. Gauss Mfg. Co., 113 Mo., 98; Hartford Bridge Co. v. Granger, 4 Conn., 142; Jenness v. Jones, 68 N. H., 475; Kutcher v. Love, 19 Col., 542; Molyneaux v. Collier, 13 Ga., 406; McKinzie v. Stretch, 53 Ill. App., 184; Durgin v. Somers, 117 Mass., 55; Taylor v. Bay City Ry. Co., 101 Mich., 140; Plummer v. Currier, 52 N. H., 287; Armour v. Gaffney, 51 N. Y. Supp., 846.

The issue being as to whether both or either of the defendants in this case were negligent, and the motorman of defendant railway company having testified that he rang the bell on his car immediately before the collision, the excluded evidence was competent and admissible to contradict the testimony of the motorman to that effect, the statement of the motorman to the president of the railway company being in the nature of a report of the circumstances attending the transaction

which resulted in appellee's injuries. City of Austin v. Nuckols, 42 Texas Civ. App., 5; Rogers v. Trustees, 42 N. Y. Supp., 1046.

This evidence showed conclusively that the acts of this defendant were not the proximate cause of the alleged injuries to plaintiff, and that the negligence of its co-defendant was solely responsible, if anything was, for such injuries. Railway Co. v. Chambers, 73 Texas, 229; Gonzales v. Railway Co., 84 Texas, 7; Railway Co. v. Reed, 88 Texas, 448; Railway Co. v. Bingham, 90 Texas, 223; Brush v. Lefevre, 93 Texas, 607; Railway Co. v. Doherty, 4 App. C. C., p. 233.

It may be that the evidence warrants a finding that the driver of the ice wagon was guilty of negligence in failing to discover the approach of the car, or in going on the track without looking for approaching cars. If this be conceded, then we have a case where an original negligent act (that is, the act of the driver of the wagon in going on the track), merely constituted or amounted to a negligent condition of which an independent and intelligent agency (the motorman) took advantage; and the negligence of the motorman in failing to stop his car after discovering the negligence of the driver of the wagon, must be held to be the proximate cause of the collision. (On error in the eighth and ninth charge. These instructions held each defendant liable to plaintiff if the injury to him was caused by the concurring negligence of each irrespective of the question of negligence by the motorman after discovering the wagon on the track.) Hays v. Gainesville St. Ry. Co., 70 Texas, 607; McDonald v. Railway Co., 86 Texas, 13; T. & P. Ry. Co. v. Breadow, 90 Texas, 31; Texas, etc., Ry. Co. v. Staggs, 90 Texas, 461; Texas, etc., Ry. Co. v. Harby, 28 Texas Civ. App., 24; Law v. Mo., etc., Ry. Co., 29 Texas Civ. App., 134; Galveston, etc., Ry. Co. v. Ryon, 70 Texas, 58; International, etc., Ry. Co. v. Cocke, 64 Texas, 151; St. Louis, etc., Ry. Co. v. Jacobson, 28 Texas Civ. App., 150; Railway v. Ware, 67 Texas, 635; Seale v. Railway Co., 65 Texas, 277; M., K. & T. Ry. Co. of Texas v. Dobbings, 40 S. W., 865; Stone v. B. & O. R. R. Co. (Mass.), 41 L. R. A., 794; Fowles v. Briggs (Mich.), 40 L. R. A., 528; Griffin v. Jackson L. & P. Co., 55 L. R. A., 318; M., K. & T. Ry. Co. v. Merrill (Kan.), 59 L. R. A., 711; Cole v. German S. & L. Society (U. S.), 63 L. R. A., 416; Nelson v. Narragansett E. L. Co. (R. I.), 67 L. R. A., 116.

*Jas. H. Robertson* and *Webb & Goeth,* for appellee.—A street car company has no exclusive or paramount right to the use of that part of the street upon which its track is laid but all persons have an equal right to use the street for travel; therefore, it will not be presumed that a person driving his team in front of a moving car and parallel to the track will not in the exercise of his lawful right drive his team upon and across the track in front of the car, and before doing so he will not be required as matter of law to *look and listen,* the measure of his duty being at all times to exercise ordinary care. Street Ry. Co. v. Hewett, 67 Texas, 474-9; Street Ry. Co. v. Renken, 15 Texas Civ. App., 229-

234; Street Ry. Co. v. Levyson, 52 Texas Civ. App., 122; Street Ry. Co. v. Limberger, 88 Texas, 86; Street Ry. Co. v. Kumpf, 99 S. W., 863-865; Street Ry. Co. v. Haines, 45 Texas Civ. App., 289; Rascher v. Ry. Co., 30 Am. St., 447 (note); Street Ry. Co. v. Woodlock, 29 S. W., 817; Street Ry. Co. v. Hurley, 10 Texas Civ. App., 246; Sherman & Red. Neg., sec. 462.

The third assignment of error of appellant railway can not be sustained, because the requested charge would have misled the jury by causing them to believe that the railway would only be required to use ordinary care to avoid injury to persons or vehicles on its tracks *after it discovered their danger.* San Antonio Traction Co. v. Levyson, 52 Texas Civ. App., 122; Northern Tex. Trac. Co. v. Hunt, 54 Texas Civ. App., 415; Railway Co. v. Conuteson, 51 Texas Civ. App., 1; Railway Co. v. Frugia, 43 Texas Civ. App., 48; Railway Co. v. Summers, 51 Texas Civ. App., 133.

Where plaintiff recovers judgment against joint tort feasors and the evidence is sufficient to sustain the judgment against all of them, but, nevertheless, error was committed as between the defendants, the judgment as to the plaintiff should be affirmed. Kampmann v. Rothwell, 101 Texas, 535-540; City of San Antonio v. Smith, 94 Texas 266; City of San Antonio v. Talerico, 98 Texas, 151.

JENKINS, ASSOCIATE JUSTICE.—This is a suit for damages for personal injuries sustained by appellee by reason of a collision between a car of the Austin Electric Railway Company and a wagon and team of the Austin Ice Company, whereby the said team was frightened and caused to run away, and against a buggy in which plaintiff was sitting at the time, and thereby inflicting injuries upon her, as described in appellee's petition. Judgment for appellee for $6000 against the said Railway Company and the said Ice Company, a dissolved corporation, and against L. E. Tinnin, R. S. Tinnin, C. I. Tinnin, and F. C. Davis, stockholders of said Ice Company.

The undisputed facts show that appellee was sitting in a buggy in the day time, on the east side of Congress Avenue, between Ninth and Tenth Streets, and near the intersection of said Ninth Street and Congress Avenue. That the Railway Company was operating its street cars on said Avenue, which runs north and south. That said Avenue is a broad and straight street. That there is a double track of the street railway near the center of said Avenue, there being about six feet between said tracks. That the wagon of the Ice Company was on the east side of said Avenue, and had started diagonally across the same, between Ninth and Tenth Streets, traveling southwest; and, after crossing the east track of said railway, had turned south, traveling parallel with the west track of said railway for a short distance, and then turned west across the north track, at which time a car traveling west struck the horses attached to said wagon, and caused them to run away and inflict injury upon appellee, sitting in said buggy.

Appellee alleged negligence as to both the Railway Company and the Ice Company, substantially in this: Against the Railway Company in that at the time it was operating its car at a high rate of speed, and that the motorman saw, or, by the exercise of ordinary care, could have seen, the ice wagon was approaching and entering on the track in front of the car in time to have avoided said collision. Against the Ice Company in that the driver of its wagon saw, or, by the exercise of ordinary care, could have seen, that the street car was approaching in such close proximity that a collision would occur by attempting to drive the wagon and team across the track in front of said car, in the manner that he did. That the negligence both of the Railway Company and of the Ice Company was the proximate cause of her injuries.

The Street Railway Company, in addition to a general denial, alleged substantially that the negligence of the Ice Company was the proximate and sole cause of appellee's injuries in this: That it was operating its car at a proper speed; that the ice wagon was being driven parallel with the track of the Railway Company at a safe distance therefrom, and that the driver of said wagon suddenly turned across the railway track in such close proximity to the car that it was impossible to stop said car in time to avoid the collision, after discovering the intention of said driver so to do, and that after such discovery, its motorman did all that he could to stop said car. That said motorman had the right to presume that said driver would continue to travel parallel with said car, and at a safe distance therefrom, and that he would not turn suddenly in front of said moving car in such close proximity thereto. The Railway Company also pleaded that the plaintiff failed to use ordinary care to secure prompt and skilled medical attention, and that she failed to use ordinary care to follow the instructions of her physicians, and by reason of such failure, contributed to her own injuries.

The Ice Company, in addition to a general denial, alleged substantially that the negligence of the Railway Company was the proximate and sole cause of appellee's injuries, in that the driver of its wagon exercised proper care, and that the Railway Company ran its car down grade at a rapid and dangerous speed, and that the motorman saw the wagon and team crossing the track in time to have avoided the collision, but did not ring the bell or sound the gong, but ran into said wagon and team and frightened said horses and caused them to break away and run against the buggy in which appellee was seated.

*As to Appellant, the Street Railway Company.*—1. Its first assignment is upon the refusal of the court to give its requested charge which contained, among other things, the following: "If you believe from the evidence that the driver of the Ice Company's wagon drove his team in a parallel direction with the street car, and just ahead of said car, a few feet from said track and a safe distance from same, then the motorman on the street car had the right to presume that the driver of the ice wagon would so continue to drive, and not place himself in danger by turning across the street car track, and, if you so believe from the

evidence, you are then instructed that it was not the duty of the motor-man to use any means to check said car until he saw, if he did see, that the driver of the ice wagon was going to turn across the street car track in front of the car. . . ."

Appellee, in reply to this assignment, says: "Street railways should not presume that persons traveling near and parallel to their tracks may not and will not turn across the tracks," and bases this upon the proposition that "street railways have no exclusive or paramount right to the use of streets covered by their tracks." That street railways have no such exclusive right is true. San Antonio St. Ry. Co. v. Renken, 15 Texas Civ. App., 234, 38 S. W., 829; San Antonio Trac. Co. v. Kumpf, 99 S. W., 864; San Antonio Trac. Co. v. Haines, 45 Texas Civ. App., 289, 100 S. W., 791; Houston City St. Ry. Co. v. Woodlock, 29 S. W., 818. Many cases from other jurisdictions might be cited to the same effect. Many cases might also be cited in which it is said that street car companies have not a paramount right to the use of the streets on which their tracks are laid. We understand this also to be the law, using the word "paramount" in the sense in which it should be used in such cases. But we think the appellee's proposition is too broad. While street car companies have no exclusive right to the use of streets, it may be said that they have a preferential right to a certain extent, arising from the character of their operation. They have, at least, an equal right with others to the use of the street; their cars can not turn aside, as can an ordinary vehicle, and are not so easily stopped as are ordinary vehicles going at the same speed. Also if street cars, when proceeding along an open street at a proper rate of speed, when other vehicles or foot travelers are crossing the street in plain view of each other, when either could stop until the other had passed, if the street car must give the preference under such circumstances to ordinary travel, and stop until such vehicles or foot travelers have crossed the street, it might amount to greatly lessening the efficacy of street cars as a means of conveyance, to the great detriment of the public. We are not now discussing the doctrine of discovered peril, but if, under such circumstances, preference ought to be, and almost universally is given to the street car, would this not have a bearing as to when the peril ought to be discovered. In Galveston City R. Co. v. Hewitt, 67 Texas, 480, it is said: "If a person be seen on the track it may be assumed, if the person be an adult, that he will leave the track before the car reaches him." Why? Because such person ought to give the car the preference, and step aside for a moment and allow it to proceed on its way, rather than assert an equal right to the street and compel the car to slow down to his gait so long as he chooses to remain on the track; and from the fact that people usually recognize and act upon this preferential right of the car, the motorman may well assume that it will be recognized and acted upon in a given instance, until there is something to reasonably indicate the contrary. And so, as alleged in this case, if one be driving a wagon along parallel with

and close to a moving car, the motorman might well presume, and be justified in presuming, that the driver of the wagon would not turn suddenly in front of the car, and in close proximity thereto. If under such circumstances the jury should find that the negligence of the driver of the wagon was the proximate cause of the injury, it might well be said that the evidence fully sustains the verdict, because the motorman acted upon the presumption that the driver of the vehicle would not thus act, and that he was not guilty of negligence in acting upon such presumption. But this is for the jury under all of the facts and circumstances of the case, and is a very different proposition from the court's so instructing the jury, as a matter of law.

There is not wanting authority holding that such instruction is proper, but we believe that the sounder view is that such an instruction would be upon the weight of the evidence, and so holding, we overrule the Railway Company's assignment in this regard. By way of further illustration: It is said that the motorman had the right to presume that the driver of the wagon, traveling along near and parallel to the track, and just in front of the street car, would not attempt to cross in front of same. Why? Because, seeing or hearing the street car so near him, he must know that such an attempt would necessarily be dangerous to him, and to his wagon and team; and sane men do not usually rush recklessly and needlessly into danger. But suppose he was not sane and that fact was known to the motorman? Of course he would not be justified in indulging any such presumption. "But," it may be replied, "the driver in this case was not insane." True, this supposed case is given in pursuance of the adage that "extreme cases illustrate principles." In this case the presumption that the driver of the wagon would not attempt to cross the railway track, must be based upon the supposition that he saw the street car, or heard its approach. But he testified that he neither saw nor heard it. Did the motorman know this, or, at least did he know enough in this regard to deprive him of the absolute presumption, as a matter of law, that the driver would not attempt to cross the street? The evidence shows that the car was moving along parallel with the wagon for about two or three car lengths, very close to the wagon and gradually gaining on it, during all of which time the motorman testifies that he was sounding the gong, and yet the driver of the wagon gave no indication of turning from his near proximity to the track. Might this not have suggested to the motorman that the driver of the wagon neither saw nor heard the street car? Especially when, as the street car company both alleged and proved he was driving a hooded wagon, which prevented his seeing the street car without looking around; and that the wagon made so much noise that he could not hear the approach of the street car. Were these facts apparent to the motorman before the collision? If so, what right had he to presume that the driver of the ice wagon would not continue across the street? These facts are sufficient, we think, to show that whether or not the motorman had the right to presume that the driver

of the ice wagon would not attempt to cross the track, under the cir-. cumstances that he did make such attempt, was a question of fact for the jury, and not a matter of law for the court.

This also disposes of the fifth assignment of error, which is based on the failure of the court to instruct the jury in its main charge as requested in the special charge above discussed.

2.   As to the second assignment, we hold that the court did not err in refusing to give the requested charge, for the reason that the matter therein requested was sufficiently given in the main charge of the court. This applies also to the sixth, seventh and eighth assignments of error, in reference to the alleged failure of appellee to secure proper medical treatment, and to follow the instructions of her physicians.   Gulf, C. & S. F. Ry. Co. v. Redeker, 67 Texas, 189; City of Ft. Worth v. Johnson, 84 Texas, 139; Harris v. Daugherty, 74 Texas, 8; Texas Mex. Ry. Co. v. Lewis, 99 S. W., 579; Northern T. Trac. Co. v. Hunt, 54 Texas Civ. App., 415, 118 S. W., 828.

3.   The court did not err in refusing to give the special charge, as shown by the third assignment of error, because said charge required of the motorman only ordinary care to avoid the injury after he discovered the peril, whereas the law requires, in such case, that he should use every care in his power consistent with the safety of his passengers. St. Louis & S. F. Ry. Co. v. Summers, 51 Texas Civ. App., 133, 111 S. W., 214.

4.   The fourth, twelfth, fourteenth, fifteenth and seventeenth assignments of error are too general.   Furthermore, as to the fourth assignment, which complains that the court failed in its general charge to instruct the jury as to the law of discovered peril, the court, in fact, did charge upon that issue.   The twelfth assignment is not tenable, because it does not state what were the grounds of objection to the testimony.   Schoch v. San Antonio, 57 S. W., 893; Cheatham v. Riddle, 8 Texas, 165; Norton v. Mitchell, 13 Texas, 50; Coleman v. Smith, 55 Texas, 257.   There is no sufficient statement under the fourteenth assignment, and no statement at all under the fifteenth assignment.   The seventeenth assignment is not followed by a proposition, and is not submitted as such.

5.   The ninth assignment complains of the action of the court in not granting a new trial, on account of newly discovered evidence.   The alleged newly discovered evidence is that of a physician, and relates to the failure of appellee to obtain and follow proper medical advice, upon which issue, though plead by the Railway Company, no evidence was offered on the trial of this case.   The motion is sworn to by an attorney who came into the case after October 1, 1908.   The suit was filed May 25, 1907, by other attorneys who assisted in the trial of this cause.   The attorney making the affidavit states therein that the evidence, for which a new trial was sought, was not known to him until after the trial, but he does not state that it was not known to his co-counsel, nor that it was not known to the Railway Company before the trial; no affidavit as

to this was made by any officer of the Railway Company. The court did not err in refusing to grant a new trial on account of newly discovered testimony.

6. The court did not abuse its discretion in refusing to allow the Railway Company to reopen the case and put in additional testimony, under the circumstances shown under the tenth assignment. The matter complained of in the eleventh assignment of error, with reference to the argument of counsel, does not require a reversal of this case. As to the objectionable testimony complained of in the thirteenth assignment of error, which was not responsive to the question propounded, the record shows that at the request of counsel for appellee, the court withdrew the same. It is not probable, under such circumstances, that appellant suffered any injury by reason of such testimony. We do not think the charge of the court subject to the criticism made against it in the twelfth assignment of error.

7. The nineteenth assignment is as to the refusal of the court to charge the jury as requested, that the plaintiff was not entitled to recover anything for mental suffering. The court in its principal charge submitted mental suffering as an element of damages. The contention of the railway company is that this was error, for the reason that mental suffering was not plead by appellee. Appellee alleged that by reason of being struck by the running team, she was "shocked and frightened." Whatever may be said as to "shock," "fright" is certainly a mental injury.

*As to the Appellant, the Ice Company.* 1. The fifth assignment of the appellant, the Austin Ice Company, will not be considered for the reason that, taken together with the statement thereunder, it is too general. It complains of the failure of the court to give special charge No. 1, without informing us what said charge was, and refers us to the entire statement of facts in support of its contention.

2. We do not think that the action of the court in refusing to receive the verdict, and in giving the supplemental charge, and in receiving the final verdict of the jury, is subject to the criticisms made against it in the sixth assignment of error. The jury attempted to return a verdict against each of the defendants for an amount aggregating $6000, but apportioning this amount between the defendants. This they could not legally do, and the court so instructed them in a supplemental charge; and afterwards gave the jury a proper answer in response to a question propounded by them to the court. Thereupon the jury retired and returned a verdict for the same amount against both the defendants.

3. We find no error in the eighth and ninth paragraphs of the court's charge. As we understand these paragraphs of the court's charge they are the reverse of the deductions drawn therefrom by the Ice Company, as shown by its seventh and eighth assignments of error.

None of the other assignments of error on the part of the Ice Company are directed against the appellee.

If error was committed against the Ice Company as to its cross-

action over against its co-defendant; this is no reason why the case should be reversed as to the appellee.

4. We will next enquire as to whether or not there was error as to the cross-action of the Ice Company against its co-defendant the Austin Electric Street Railway Company. The court sustained a general demurrer to said cross-action. The pleading in this regard would certainly have been better if it had stated with clearness the facts relied upon in said cross-action, but whether or not they were sufficiently stated as against a general demurrer, it is not necessary for us to decide, as this case is to be reversed upon another point, and the pleading will doubtless be amended before another trial. We are not apprised upon what ground the general demurrer was sustained. If it was upon the proposition that there can be no contribution between joint tort feasors, we think the trial court was in error; as it is evident the Ice Company did not seek contribution from its co-defendant, but sought to recover the entire amount of any judgment that the plaintiff in the case might recover against it jointly or separately.

As we understand the law, where one party has, by his negligence brought about a condition, and another party is guilty of negligence in not recognizing and acting upon such condition, and a third party, without negligence, is injured by reason of the joint negligence of the two parties, he may recover against both; and, as between the injured innocent party and the joint wrongdoers, there will be no inquiry as to the comparative negligence of the two, and no apportionment of damages based on such comparison. In such case the negligence of both of the parties is the proximate cause of the injury to the innocent party. But, as to the two negligent parties, if the negligence of one was merely passive, or was such as only to produce the occasion, and the other negligent party was the active perpetrator of the wrong, the former may recover over against the latter. As between the two negligent parties, the negligence of the active perpetrator of the wrong would be the proximate cause of the injury to the party whose negligence did no more than produce the condition. City of San Antonio v. Smith, 94 Texas, 266, 59 S. W., 1109; City of San Antonio v. Talerico, 98 Texas, 151, 81 S. W., 518; Kampmann v. Rothwell, 101 Texas, 540, 109 S. W., 1089.

5. The Ice Company offered to prove that the president of the Street Railway Company admitted to the secretary of the Ice Company that it was responsible for the injury, both to the plaintiff and the Ice Company. This admission was not made in a casual conversation, but in a transaction in which the president of the railway company, as the representative of said company, paid the Ice Company $61 for injury done to its wagon in said collision, which fact it offered to prove. Upon objection of the Railway Company the Ice Company was not allowed to make this proof, the objection being that said testimony was irrelevant and immaterial as to it, the Railway Company. The evidence offered was relevant to the issue between the Ice Company and the Railway Company; and certainly it was very material. It may be that

the president of the Railway Company had no authority to make such admissions on behalf of the Railway Company, or that the same were made by way of compromise, but no such objection was made, and therefore, presumably, none such was tenable.

6. We do not think that the excluded testimony, shown by bill of exceptions No. 4 was admissible for the reason that it was not sought to prove, as a fact, the statement of the motorman as to how said accident occurred, or that said statement was made under such conditions as to make either *res gestae,* or in the nature of a report of an inferior to a superior officer, but only that the president of the Railway Company stated to the secretary of the Ice Company, that the motorman (time, place and circumstances not given) made certain statements in reference to the collision. This evidence was hearsay.

Finding no error in the record as to the appellee, the judgment as to .her is affirmed. For the error of the court in refusing to allow the Ice Company to prove the admissions of the president of the Railway Company, as above indicated, the judgment of the trial court, as between the Austin Electric Railway Company and the Austin Ice Company and its stockholders, is reversed and the cause remanded.

*Affirmed in part and reversed and remanded in part.*

The Austin Street Railway Company made application for writ of error, also the Austin Ice Company and its stockholders, Tinan and others. Both applications were refused as to the judgment by appellee against them, and both dismissed for want of jurisdiction as to the branch of the case which had been reversed and remanded.